STATE of Tennessee, Appellee,

v.

**Paul TRIPP, Appellant.**

Court of Criminal Appeals of Tennessee,
at Nashville.

April 7, 1988.

Permission to Appeal Denied by Supreme
Court July 25, 1988.

W.J. Michael Cody, Atty. Gen. and Reporter, Wayne E. Uhl, Cheryl Blackburn, Asst. Attys. Gen., Nashville, for appellee.

Lionel R. Barrett, Jr., Nashville, for appellant.

## OPINION

O'BRIEN, Judge.

This is an appeal from denial of appellant's discharge and release into an out-patient treatment program from his present status as a judicially hospitalized patient at Middle Tennessee Mental Health Institute. (MTMHI).

In August of 1983 appellant was found not guilty by reason of insanity of the homicide of his wife. He was involuntarily committed to Middle Tennessee Mental Health Institute where he has remained hospitalized under court order. On 10 April 1986, pursuant to T.C.A. § 33-6-110(c) the superintendent of MTMHI notified the committing court that appellant no longer met the standards for judicial hospitalization and could be adequately treated as an out-patient under a mandatory out-patient treatment program. After a hearing on 28 April 1986 the court took the matter under advisement pending development and submission of a proposed out-patient treatment plan for the appellant.

On 22 May 1986 an out-patient treatment plan was submitted by MTMHI which indicated the program for Mr. Tripp would be initiated through the facilities of Dede Wallace Mental Health Center where he would participate in day treatment on five days a week initially, to be reduced gradually as his condition warranted. The officials at MTMHI requested the court to authorize off-ground privileges, either with or without staff supervision, to enable Mr. Tripp to locate and acquire a personal residence in the community. His twice monthly injections of psychotropic medication would be administered and monitored by Dede Wallace Mental Health Center. The court heard evidence relative to the extent and nature of the treatment and therapy to be followed by Mr. Tripp during the progress of his out-patient treatment program. At the conclusion of the hearing the trial judge expressed his concern with the prospect of Mr. Tripp's complete relocation into community life in the outside world after having lived for the length of time he had in structured, supervised hospital care. He

again deferred a final decision until a determination could be made regarding appellant's temporary residence in a transitional home or halfway-house. He also expressed an interest in hearing from some member of appellant's family who might assume some responsibility for him beyond the time of his residence in the transitional home. The case was continued for an incoming report.

On 23 September 1986 the hearing was resumed. The coordinator of Harbor House, a transitional home, was called as a witness. She described Harbor House as a short-term residential program for the chronically mental ill in which the average length of stay was ninety (90) days. She described the program available for residents, as well as her screening interview with appellant. She informed the court that after reviewing the records and discussing the case with involved persons at MTMHI and the Dede Wallace Center it was her opinion Mr. Tripp was the type of person who could handle the responsibility as a resident of the Harbor House facilities. At the time when, in the opinion of the coordinator and the case manager, an individual could benefit from leaving Harbor House to take up private residence, the case manager would assist him in locating an appropriate residence. The patient would not leave the facilities until he had a place to live unless he broke the rules. In that event he would return to the facility from which he had come. The witness concluded that Mr. Tripp was ready to leave the hospital for transitional living at Harbor House. She believed, after perhaps ninety (90) days residence there and being taught some basic skills, he would be ready to take up living on his own. In response to inquiry she expressed doubts about other available arrangements or plans for an individual who was not ready to be on his own after the initial period of transitional living at Harbor House, except for a possible extension of approximately sixty (60) days at the halfway residence.

A licensed psychological examiner from the Dede Wallace Center described the treatment program in which Mr. Tripp was involved at that center as well as his contacts with appellant in the several weeks he had been in the program. The witness explained that at the time Mr. Tripp should be discharged from MTMHI and become the patient of Dede Wallace Center that institution would be responsible for administration of his medication. At the time he should be discharged from Harbor House to live in an apartment or a boarding home he would continue to attend day treatment at Dede Wallace where he would receive his medication on schedule. If Mr. Tripp failed to continue the day program at the institution or missed medication the court would be immediately notified of his noncompliance. The institution would also report any regression of appellant's mental illness.

An aunt of the appellant testified there was a history of schizophrenia in her family and among eight (8) siblings four (4) had been diagnosed as schizophrenics, including appellant's father. All of them apparently functioned reasonably well unless they discontinued the use of their medication. Appellant was the first among her family who had ever been violent. She was of the opinion appellant could safely return to society so long as he continued his medication. She had no personal reservations about the matter but it was not possible for her nephew to live with her because of family problems.

There was additional testimony at the hearing from a registered nurse who had agreed to serve as appellant's sponsor. Her education included a degree in psychology. During her clinical training at Vanderbilt University part of her training included the interview of patients at MTMHI where she became acquainted with appellant. She understood her role as sponsor to be that she would assist him in adjustment after he was discharged from the hospital and notify the appropriate authorities in the event he demonstrated any evidence of regression. After his discharge she would also be available as a registered nurse to administer his medication.

A psychiatric social worker from MTMHI who had testified previously said that since appellant had been participating in the pro-

gram at Dede Wallace Center his emotional state had improved and all progress reports had been favorable. She believed that appellant's motivation to be discharged into society would assure his compliance with all of the conditions of the out-patient treatment program. It was her opinion that it would be a slow process for appellant to adjust himself to community life due to the length of time he had been institutionalized.

At the conclusion of the hearing the trial court expressed some misgivings about the sufficiency of the plan to warrant Mr. Tripp's release in accordance with the recommendations of the superintendent. He expressed the view that if he approved Mr. Tripp's release it would be on a temporary basis as a resident in the halfway-house for a period of time to determine his progress in this transitional setting. He took the matter under advisement pending that decision.

On 29 September 1986 the trial judge entered an order denying the request for Mr. Tripp's discharge from Middle Tennessee Mental Health Institute. His findings and conclusions, stated in the order, indicated that he did not consider the out-patient treatment plan approved by MTMHI in accordance with T.C.A. § 33–6–201(b)(2) to be adequate to cover the patient's needs, or the needs of the community. He concluded that although the institutional authorities were of the opinion that Mr. Tripp's condition had improved they retained reservations concerning his community release in other than a closely supervised, monitored environment. It was his view that the consensus among all the professional witnesses as well as lay persons who testified was that appellant must continue scheduled medication or he would revert to his previous psychotic condition, be a danger to society and in the same category he was at the time of his original commitment in 1983. The court evidenced concern about Mr. Tripp's previous history of non-compliance with an out-patient treatment plan.

It was the court's opinion that appellant was presently mentally ill or suffering from a mental illness in remission. This remission was effected by maintaining a schedule of medication in the closely supervised environment of MTMHI and without such supervision the patient would pose a likelihood of serious harm to others as contemplated in T.C.A. § 33–6–104(a). The court expressed the further view that under the evidence and the background of the case the proposal submitted conveyed an unrealistic and unforeseeable expectation of total community release for Mr. Tripp which was unsuitable to both the patient and the community.

The criteria for discharge of involuntarily committed persons under the provisions of T.C.A. § 33–6–110 sets out that the superintendent's decision on eligibility for discharge includes the rebuttable presumption of its correctness. The trial court must find by clear, unequivocal, and convincing evidence that the patient is not eligible for discharge or, otherwise, it must order the patient's release from involuntary commitment in accordance with the recommendations of the superintendent. The standard of review for this Court is de novo upon the record of the trial court with a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. T.R.A.P. 13(d).

We do not find that the evidence preponderates against the trial court's findings. There is a serious omission in the plan promulgated by the authorities. The program appears to be well developed for the patient's benefit and for his supervision and the coordination of his activities through all stages of his release to the point of his provisional, community relocation in halfway-house placement outside the institutional setting. Beyond that there is a gap of considerable dimensions. There is evidence in the record that the normal stay for a patient at the halfway-house is from sixty (60) to ninety (90) days. There is evidence that upon completion of his residence at Harbor House Mr. Tripp will be living in an apartment or boarding house and continuing his day treatment at Dede Wallace Center. The administration of his medication, which he must take on a bi-weekly basis, will be monitored by that

institution as needed. The proof is that Mr. Tripp is to be released on the *mandatory* out-patient treatment schedule because of the nature of the case and his previous history of non-compliance with the administration of his medication. There is also evidence that he had requested an immediate, independent, unsupervised living situation and each of the testifying witnesses were of the opinion that his situation required supervised and structured release. At least one of the medical experts speculated that possible external pressures of living in the outside world could affect his mental state. While there is a possibility for unscheduled home visits after his release from Harbor House, the trial court heard no evidence about how Mr. Tripp would sustain himself financially, or if he was capable of obtaining and retaining employment. Although there is statutory procedure for recommitment in event of failure to comply with the out-patient treatment plan there is nothing in the record to indicate how compliance will be monitored in the two (2) week intervals between the scheduled injections of Mr. Tripp's medication required to maintain his state of remission. Nothing was heard from Mr. Tripp although evidently he was in court on the occasion of each of the hearings in this matter. It would appear that his testimony would be highly essential to a decision of the magnitude involved in his release into a free society.

Assuming, as we must, that the primary concern of the psychiatric community in general, and the authorities in this case in particular, is for the welfare of the patient and his restoration to community living, the obligation of the court also includes the additional duty to consider the interests, security and safety of the community at large. In cases of this nature the patient is eligible for discharge subject to his participation in the mandatory out-patient treatment program approved by the releasing facility and the out-patient treating professional. The court is entitled to some greater evidence that Mr. Tripp is capable of assuming that responsibility and fully willing to participate in appropriate out-patient treatment. There are adequate provisions

in the statutes to facilitate his release when he is able to accomplish that requirement.

The judgment of the trial court is affirmed.

WILLIAM S. RUSSELL, Special Judge, concurs.

BYERS, J., dissents.