
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
MAY SESSION, 1996

| | | |
|---|---|---|
| **STATE OF TENNESSEE**, | ) | |
| | ) | No. 02C01-9512-CR-00374 |
| Appellee | ) | |
| | ) | SHELBY COUNTY |
| vs. | ) | |
| | ) | Hon. W. Fred Axley, Judge |
| **JACKIE H. MARTIN**, | ) | |
| | ) | (Petition For Discharge From |
| Appellant | ) | Involuntary Commitment) |

For the Appellant:

A. C. Wharton, Jr.
District Public Defender

Walker Gwinn
Asst. Public Defender
201 Poplar, Suite 2-01
Memphis, TN  38103



:

For the Appellee:

Charles W. Burson
Attorney General and Reporter

Robin L. Harris
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493


John W. Pierotti
District Attorney General

Ms. Edgar A. Peterson, IV
Asst. District Attorney General
Criminal Justice Complex
Third Floor, 201 Poplar
Memphis, TN  38103


OPINION FILED:  _____

REVERSED IN PART AND REMANDED


**David G. Hayes**
Judge

**OPINION**

The appellant, Jackie H. Martin, appeals the order entered by the Criminal Court of Shelby County denying his petition for discharge from involuntary commitment.[1]  On appeal, the appellant presents two issues for our review: (1) whether the evidence preponderates against the trial court's finding that the appellant is not eligible for mandatory outpatient treatment as an alternative to commitment; and (2) whether the trial judge should have recused himself from this case.

After a review of the record and the applicable law, we conclude that the evidence at the appellant's hearing preponderates against the decision of the trial court.  Accordingly, we remand this case to the trial court for entry of an order discharging the appellant to mandatory outpatient treatment consistent with the plan proposed by the superintendent of the mental health facility.

## I.  Background

On August 4, 1981, a Shelby County Grand Jury indicted the appellant for one count of "throwing a missile calculated to produce death or great bodily harm at an occupied vehicle" and three counts of assault.[2]  On October 19, 1981, Judge James Beasley found the appellant not guilty by reason of insanity. Accordingly, the appellant was involuntarily committed to Western Mental Health Institute, WMHI, pursuant to Tenn. Code Ann. § 33-604 (1981 Supp.).  On December 27, 1985, the staff of WMHI recommended the appellant's discharge

---

[1]This court has jurisdiction to entertain this appeal pursuant to Tenn. Code Ann. § 33-6-110(g) (1996 Supp.).

[2]The indictment arose from an incident on June 23, 1981, when the appellant threw a beer bottle, and then, a brick at a Memphis Police Department squad car.  Following this action, the appellant apparently engaged several police officers in a physical confrontation.

to a mandatory outpatient treatment program.[3]  However, while Judge W. Fred Axley took this recommendation under advisement, staff members at WMHI reexamined the appellant and determined that his condition had deteriorated to the extent that the appellant required continued confinement.[4]

In 1989,  Judge Axley approved the appellant's placement in a group home in Trenton, pursuant to a mandatory outpatient treatment plan.  Because of the appellant's progress at the group home, Judge Axley permitted the appellant to complete a two week stay at the training center in Smyrna for skills evaluation.  However, by early 1991, the appellant's mental condition had regressed.[5]  Moreover, the appellant violated his treatment plan by having a knife in his room and by drinking alcohol.[6]  In response to these violations, Judge Axley returned the appellant to the hospital for inpatient care.

The appellant continued to meet the commitment standards imposed by Tenn. Code Ann. § 33-6-104 (1994 Supp.) and § 33-7-303(c) (1994 Supp.) throughout early 1994.  However, in July 1994, staff members of WMHI notified Judge Axley, that, after the required six month evaluation of the appellant, they determined that, if "supportive community services [could] be worked out," the

---

[3]Tenn. Code Ann. § 33-6-201 (1994 Supp.) provides that a patient involuntarily committed, who, in addition to meeting other enumerated requirements, remains mentally ill or is suffering from a mental illness in remission and whose condition is likely to rapidly deteriorate without continued treatment shall be eligible for discharge subject to the obligation to participate in a medically appropriate outpatient treatment plan approved by the releasing facility and the outpatient treating professional.

[4]Judge Axley was the lead prosecutor in the appellant's 1981 criminal case.  The appellant argues that Judge Axley's prior involvement in his case necessitates his recusal, see infra, Section III.

[5]The record indicates that the appellant was experiencing hallucinations and was frequently agitated.

[6]Apparently, the appellant indicated to staff members that he needed the "knife for protection."  Moreover, the appellant's treatment records reflect that he "displayed a great deal of paranoia in regard to the group home staff (who were all black . . . ) and in regard to the black residents of the home."

appellant would not meet the necessary commitment standards.[7]  Again, in September and December 1994, the staff advised Judge Axley that the appellant would not meet commitment standards if placement in an outpatient treatment program were available, however, such services were not available at the time. In June 1995, the staff informed Judge Axley that a structured supervised community placement was available for the appellant, that they had developed a mandatory outpatient treatment plan for the appellant, and that they had informed the appellant of his legal obligation to comply with the terms of the outpatient program.  On July 5, 1995, Judge Axley heard the appellant's petition requesting discharge from inpatient hospitalization into an outpatient treatment program.

The only witness to testify at the discharge hearing was Dr. Pickering, a psychologist at Western Mental Health Institute.  He testified that he has been involved with the appellant's treatment since 1991.  He stated that the appellant is mentally ill.  "[The appellant] continues to show some of the negative signs of schizophrenia, but . . .  he is not actively psychotic at this time and is in partial remission as a result of his treatment."  Commenting on the appellant's progress, Dr. Pickering explained that the appellant remained on a "plateau" for the first several years, but, beginning in 1992, when given new medication, the appellant exhibited  "steady improvement."[8]  The doctor also stated that, indicative of his current behavior, the appellant recently, voluntarily "walked away from" a potential physical confrontation initiated by another patient.  Furthermore, the appellant has retained full privileges at the center and has not displayed any aggressive behavior.  When questioned about the failure of prior outpatient treatment, Pickering asserted that they have redesigned the appellant's

---

[7]The staff recommended that hospitalization of the appellant continue until they could provide such outpatient services.

[8]The appellant began treatment with Clozaril, an atypical antipsychotic drug that became available in 1992.

4

proposed outpatient treatment plan to account for the appellant's treatment with Clozaril.[9]  He added that case managers would be available to the appellant on a twenty-four hour basis.

Dr. Pickering maintained that the appellant does not meet the commitment standards of Tenn. Code Ann. § 33-6-104.  However, he did concede that the appellant could be "unable to avoid severe impairment or injury from specific risk," if he does not comply with his medication and treatment, and that the appellant has a history of noncompliance.  Moreover, he acknowledged that, without continued treatment, the appellant's mental illness is likely to depreciate to the "point that the patient will pose a likelihood of serious harm."  Dr. Pickering agreed that his answers relating to the appellant's condition focused on his observations of the appellant "at this time," and that there were no guarantees that the appellant would comply with the program, or that the appellant would not pose "substantial harm to the community."

Judge Axley denied the appellant's petition, stating:

The personnel involved in Mr. Martin's life, other than this Court, really have no idea of his history.  Before Mr. Martin committed the assault on the officers . . . he had a history of violence.  It's something that's been ongoing in his life.

. . . What we're saying . . . is that he has been stabilized emotionally by medication, but he, also, has a history of noncompliance.

He does possess the propensity to become a danger to others and quickly in Mr. Martin's case.  Mr. Martin functions well at the hospital.  He does not appear to this Court to be in a position to function well because he needs very, very close supervision.

An outpatient treatment plan is not sufficient to meet Mr. Martin's needs because of what has been shown through prior occasions of his release in group home settings or boarding house settings.

## II.  Sufficiency of the Evidence

_____

[9]  He stated that Clozaril requires weekly monitoring and blood tests of a patient.

5

The appellant argues that the evidence preponderates against the trial court's decision denying his discharge to legal mandatory outpatient treatment as specified in Tenn. Code Ann. § 33-6-201 (1994 Supp.). Tenn. Code Ann. § 33-6-110(c), (f) (1994 Supp.), sets forth the procedure concerning the discharge of one involuntarily committed. The provision states:

> When the superintendent determines that the patient is eligible for discharge under § 33-6-109 or § 33-6-201, he shall notify the committing court of that conclusion, the basis for it, and, if discharge is pursuant to § 33-6-201, the outpatient treatment plan approved by the releasing facility for the patient. Such determination by the superintendent shall constitute a rebuttable presumption of correctness thereof. . . .
>
> . . .[I]f the court finds by clear, unequivocal, and convincing evidence that the patient is not eligible for discharge . . . it shall order his return to the hospital . . . . If the court finds otherwise, it shall order the patient's release from involuntary commitment in accordance with the recommendations of the superintendent.

Tenn. Code Ann. § 33-6-110(c),(f) (emphasis added). See also State v. Tripp, 754 S.W.2d 92, 94 (Tenn. Crim. App. 1988).

The appellant asserts that the record is replete with reports supporting his discharge. Moreover, the appellant adds that the trial court's decision cannot be afforded a presumption of correctness, because it is not based on evidence at the hearing. Appellate review of a lower court's denial of discharge is "*de novo* upon the record of the trial court with a presumption of correctness of the finding, unless the evidence preponderates otherwise." State v. Groves, 735 S.W.2d 843, 844 (Tenn. Crim. App. 1987) (citing Tenn. R. App. P. 13(d)); see also Tripp, 754 S.W.2d at 94; State v. Woolard, No. 03C01-9510-CC-00296 (Tenn. Crim. App. at Knoxville, July 25, 1996). After a review of the record, we conclude that the evidence does not support a denial of the appellant's discharge from involuntary confinement.

At the hearing, Dr. Pickering stated that the appellant satisfies the standards for discharge to an outpatient treatment program as outlined in Tenn.

6

Code Ann. § 33-6-201. Dr. Pickering testified that the appellant is suffering from a mental illness, Tenn. Code Ann. § 33-6-201(b)(1)(A); that the patient's condition is likely to deteriorate rapidly unless treatment is continued, Tenn. Code Ann. §33-6-201(b)(1)(B); that the patient would continue treatment if legally required to do so, Tenn. Code Ann. § 33-6-201(b)(1)(C); that the patient is not likely to participate in continued treatment without the legally required mandate, Tenn. Code Ann. § 33-6-201(b)(1)(D); and that mandatory outpatient treatment is a less drastic alternative to commitment, Tenn. Code Ann. § 33-6-201(b)(1)(E). Dr. Pickering's testimony indicates that the appellant qualifies for discharge under Tenn. Code Ann. § 33-6-201 and § 33-6-110.

Dr. Pickering testified that, although he could not guarantee the appellant's future behavior, since his recommitment in 1991, the appellant has shown considerable improvement and has not exhibited any aggressive behavior. He also indicated that the appellant's improvement is connected to his treatment with Clozaril, which only became available in 1992, after the appellant's recommitment. Further, when questioned about the appellant's prior failure to comply with mandatory outpatient treatment, Dr. Pickering explained that significant safeguards have been implemented to aid the appellant's compliance with the proposed treatment plan, including case management services, which were previously unavailable,[10] and weekly blood tests performed at the Mental Health Center, which include testing for drug and alcohol abuse.

The trial judge correctly considered the appellant's history of violent and aggressive behavior and noncompliance with a previous outpatient program. Additionally, we share the trial court's apprehension concerning the appellant's ability to successfully complete the prescribed outpatient treatment program.

---

[10]Pickering explained that case managers are available on a twenty-four hour basis. Their duties include visiting the patient frequently, ensuring that the patient is taking medication, and ensuring that the patient keeps appointments.

Nonetheless, our review is limited to the proof in the record and the applicable law. Accordingly, we cannot conclude that the appellant's past behavior, untreated by Clozaril, provides clear and convincing evidence supporting a denial of outpatient treatment. The record indicates that the appellant's condition has improved since his recommitment in 1991. Moreover, as Dr. Pickering testified, the appellant's prior noncompliance was considered in formulating a new plan for outpatient treatment, which provides closer monitoring of the appellant. Despite this evidence, the State offered no proof to rebut the expert medical testimony of Dr. Pickering. We conclude that these facts, accompanied by a presumption of correctness, preponderate against the decision of the trial court. In the appellant's case, mandatory outpatient treatment is a suitable less drastic alternative to commitment. Tenn. Code Ann. § 33-6-201(b)(1)(E). Accordingly, the appellant is entitled to discharge from involuntary commitment.

### III. Recusal of Judge Axley

The appellant also contends that he was denied a fair hearing because "Judge Fred Axley is biased against [him] as a matter of fact and presumptively biased because Judge Axley was the State lawyer who prosecuted the indictments against Martin. . . ." Because we have determined that the evidence preponderates against the trial court's decision, we need not address the appellant's final issue. However, due to the ongoing nature of this proceeding and the potential for future proceedings in this case before Judge Axley, we conclude that the circumstances of this case do not mandate his recusal.

Initially, we note that the appellant raises Judge Axley's recusal for the

8

first time in this appeal.[11]  The failure of the appellant to raise this issue prior to his hearing amounted to a waiver of his right to question the trial judge's qualifications to hear the case.  Woodson v. State, 608 S.W.2d 591, 593 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1980); see also  State ex rel. Roberts v. Henderson, 442 S.W.2d 629, 631 (Tenn. 1969) (holding that the right of a defendant to waive the disqualification of a judge exists in both civil and criminal cases).  Accord  Hawkins v. State, 586 S.W.2d 465, 466 (Tenn. 1979).  Accordingly,  the appellant has waived this issue.  Nonetheless, a further discussion of this issue is warranted.

The appellant argues that Article 6, Section 11 of the Tennessee Constitution prohibits Judge Axley from presiding over his case.  This constitutional provision provides:

> No judge . . . shall preside on the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by affinity or consanguinity, within such degrees as may be prescribed by law, or in which he may have been of counsel, or in which he may have presided in any Inferior Court, except by consent of all the parties.

TENN. CONST., Art. VI, § 11 (emphasis added).  See also  Tenn. Sup. Ct. Rule 10, Canon 3(C)(1)(a), (C)(1)(b).  Although Art. 6, Sec. 11 appears to disqualify Judge Axley from this matter, since he was the lead prosecutor in the original cause, case law has held that the disqualifying provision is limited to "the cause on trial . . . and not prior concluded trials. . . ."  See  State v. Smith, 906 S.W.2d 6, 12 (Tenn. Crim. App. 1995) (citing State v. Warner, 649 S.W.2d 580, 581 (Tenn. 1983) (holding trial judge not disqualified on grounds that he was the prosecuting attorney in an earlier case against the appellant)).  This interpretation, likewise, applies to the present case.  The appellant also contends

---

[11]Appellate counsel (an assistant public defender) insists that the appellant's trial counsel (also an assistant public defender) "did not know Judge Axley prosecuted the case."  The record amply provides material (orders, stipulations, etc.) noting Judge Axley as the lead prosecutor in the State's case against the appellant.  Additionally, appellate counsel's argument suggesting that, even if trial counsel was aware of Judge Axley's former position, this would amount to a denial of due process via State action, is without merit.

9

that he never consented "for his former prosecutor to judge him." However, the appellant clearly gave his implied consent by failing to raise the issue of recusal prior to this present appeal. Judge Axley has presided over various matters relating to the appellant's involuntary confinement since 1983.

Regardless of whether the appellant consented to Judge Axley's hearing of the matter, the record does not support the appellant's allegation that Judge Axley's ruling was due to his personal bias against the appellant. A trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever his impartiality can reasonably be questioned. State v. Hines, 919 S.W.2d 573, 578 (Tenn. 1995) (citing State v. Cash, 867 S.W.2d 741, 749 (Tenn. Crim. App. 1993); Lackey v. State, 578 S.W.2d 101, 104 (Tenn. Crim. App. 1978)); see also State v. Smith, 906 S.W.2d 6, 11 (Tenn. Crim. App. 1995) (citing Tenn. Sup. Ct. Rule 10, Canon 3(C); State v. Dillingham, No. 03C01-9110-CR-00319 (Tenn. Crim. App. at Knoxville, Feb. 3, 1993), perm. to appeal denied, (Tenn. 1993)). As a general principle, the trial judge retains discretion over his recusal when questioned on the basis of bias or prejudice. Smith, 906 S.W.2d at 11(citing Caruthers v. State, 814 S.W.2d 64, 67 (Tenn. Crim. App. 1991)). Unless the evidence in the record indicates that the trial judge abused his discretion by not disqualifying himself, this court will not interfere with his decision. Id. (citing Caruthers, 814 S.W.2d at 67).

In the present case, although Judge Axley was the lead prosecutor in the appellant's original case, we cannot conclude that this prior involvement caused him to rule impartially and prejudicially. In fact, the record shows that Judge Axley previously ruled favorably on the appellant's behalf. Additionally, the record indicates that Judge Axley did not use the benefit of prior knowledge arising from his dealings as State prosecutor in his decision denying the appellant's discharge. Rather, Judge Axley's knowledge of the appellant's

10

background arises from his prior involvement as a judge in the appellant's cause. Nonetheless, the appellant suggests that Judge Axley's interruption of the Dr. Pickering's direct examination and his comments during the doctor's cross-examination were affirmative indicators of his preconceived decision to deny the appellant's discharge.[12]  We conclude that these comments were not prejudicial in nature, nor do they reflect bias for the State's position.  Rather, these comments were necessary in making a determination whether to discharge the appellant into the community.  Accordingly, Judge Axley did not abuse his discretion in failing to recuse himself from presiding over the appellant's hearing. This issue is without merit.

## IV.  Conclusion

After finding that the evidence presented at the discharge hearing is not sufficient to deny the appellant's release from involuntary commitment, we remand this case to the trial court for entry of an order, consistent with the procedure set forth in Tenn. Code Ann. § 33-6-110, discharging the appellant from involuntary confinement into the mandatory outpatient treatment program proposed by the superintendent.  See  Tenn. Code Ann. § 33-6-201(d)(2)(A), (B).  However, with forethought that the appellant's condition may have changed since the trial court's denial in July 1995, we advise that, prior to any release of the appellant, the superintendent must again provide a current report supporting his recommendation that the appellant be discharged to a mandatory outpatient treatment program.  See  Tenn. Code Ann. § 33-6-110(c), (f).  Additionally, we note that, if the appellant does not comply with the terms of his outpatient

---

[12]During Dr. Pickering's direct examination, Judge Axley commented that the hospital had not kept good records due to the frequency of employee turnover. However, he added that the court did keep good records relating to the appellant's condition.  Additionally, Judge Axley questioned Dr. Pickering about the appellant's "history of noncompliance while being placed in a group home" and about where the appellant would be placed if discharged (Selmer, rather than Memphis).

program, statutory measures exist by which to recommit the appellant to involuntary hospitalization.  <u>See</u>  Tenn. Code Ann. § 33-6-202 (1996 Supp.).

12

_____
DAVID G. HAYES, Judge


CONCUR:


_____
JOE B. JONES, Presiding Judge


_____
PAUL G. SUMMERS, Judge